1  KATHRYN LEE BOYD, ESQ. (SBN 189496)
2  JEFF D. NEIDERMAN, ESQ. (SBN 203818)
   SCHWARZ, RIMBERG, BOYD & RADER, LLP
3  6310 San Vicente Blvd., Suite 360
   Los Angeles, CA 90048
4  Telephone: (323) 302-9488
   Facsimile: (323) 931-4990
5
   Attorney for Plaintiffs
6  Mophie, Inc., and Daniel Huang

©©COPY

BY
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
2011 APR -7  PH 2: 52
FILED

7

8        UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF

9                    CALIFORNIA – SOUTHERN DIVISION

10

11  MOPHIE, INC., formerly known as            ) CASE NO.  SACV11-00539 DOC (MLGx)
    mSTATION Corporation, a California         )
12  Corporation, and DANIEL HUANG, an          )
    individual,                                ) COMPLAINT FOR COMPENSATORY
13                                             ) AND PUNITIVE DAMAGES:
                 Plaintiffs,                   )
14                                             ) (1) PROFESSIONAL NEGLIGENCE
         vs.                                   )
15                                             ) (2) BREACH OF FIDUCIARY DUTY
    LOZA & LOZA, LLP, a California             )
16  Limited Liability Partnership, JULIO       ) (3) NEGLIGENT
    LOZA, an individual and CHRISTINE S.       )
17  LOZA, an individual,                       )    MISREPRESENTATION
                                               )
18                                             )
                 Defendants.                   ) JURY TRIAL DEMANDED
19                                             )
                                               )
20                                             )
                                               )
21                                             )
                                               )
22  _____)

23  ///

24  ///

25  ///

26  ///

27  ///

28

                                   1
                               COMPLAINT

Plaintiffs Mophie Inc., formerly known as mStation Corporation ("Mophie") and Daniel Huang ("Mr. Huang") (collectively, "Plaintiffs"), allege as follows:

## INTRODUCTION

1.     Plaintiffs Mophie and Daniel Huang bring this action seeking redress for Defendants' professional negligence and malfeasance, which caused Mophie to lose valuable intellectual property rights, to suffer damage to its reputation and the prestige of its products, and to incur significant financial damage resulting from avoidable lawsuits caused solely by Defendants' unprofessional, unethical and negligent conduct.

2.     As a result of Defendants' wrongful conduct, Plaintiffs have suffered economic injury and seek damages to make them whole.

## JURISDICTION AND VENUE

3.     Jurisdiction is proper before this Court pursuant to 29 U.S.C. § 1338, because elements of the claims require resolution of a substantial question of federal patent law. *See Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262 (Fed. Cir. 2007) (holding state law claim for legal malpractice before the USPTO arose under federal patent law); *Immunocept LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281 (Fed. Cir. 2007) (same).

4.     Venue is proper in this district because Plaintiff Mophie's offices are located in Orange County, and Defendants maintain an office in Orange County. Many of the services and events giving rise to this lawsuit were provided and took place in Orange County, including Defendants' meetings at Mophie's offices with Plaintiff Huang and other Mophie employees regarding matters relating to this lawsuit.

## PARTIES

5.     Plaintiff Mophie is, and at all times mentioned herein was, a corporation duly incorporated under the laws of the State of California, with its principal place of business at 2850 Red Hill Avenue, Suite 128, California.

2

6.   Plaintiff Daniel Huang is, and at all times mentioned herein was, an individual residing in the County of Orange, State of California.

7.   Plaintiffs are informed and believe that Defendant LOZA & LOZA, LLP ("Defendant L&L" or "L&L") is, and at all times mentioned herein was, a law firm organized as a limited liability partnership under the laws of the State of California, maintaining an office at 500 N. State College Blvd., Suite 1100, Orange, California.

8.   Plaintiff is informed and believes that Defendant Julio Loza ("Julio Loza") is a registered Patent attorney, licensed to practice law in the State of California, and at all relevant times has been a shareholder and partner in Defendant L&L, and is a resident of California, practicing law in the State of California.

9.   Plaintiff is informed and believes that Defendant Christina S. Loza ("Christina Loza") is a registered patent attorney, licensed to practice law in the State of California, and at all relevant times has been a shareholder and partner in Defendant L&L, and is a resident of California, practicing law in the State of California.

10.   All Defendants (collectively "Defendants") represented Plaintiffs and provided legal services and advice to Plaintiffs, and were in an attorney-client relationship with Plaintiffs at all relevant times to the events set forth in this Complaint.  Among other things, Defendants breached their duties to Plaintiffs by failing to represent them according to the reasonable standard of care required of attorneys practicing in the field, causing Plaintiffs harm and damage.

## MOPHIE RETAINED LOZA & LOZA TO SAFEGUARD ITS INTELLECTUAL PROPERTY PORTFOLIO

11.   Plaintiff Mophie is an award-winning designer and manufacturer of mobile intelligent devices and accessories.  Mophie is widely recognized and highly acclaimed for its creative designs and innovative solutions, including the "Mophie Juice Pack" portable battery case certified by Apple Inc. for use with iPhones.

12.     Plaintiff Daniel Huang is CEO of Plaintiff Mophie, and participated in the design of Mophie's signature product, the "Mophie Juice Pack" line of portable battery cases.  Plaintiff Huang, along with others, formed Mophie's predecessor, mStation Audio LLC ("mStation"), which specialized in designing and manufacturing speakers and ports for Apple's iPod line.  In 2007, mStation acquired Mophie, a then-fledgling company with the novel concept of implanting batteries into cases for portable electronic devices.  The company took the "Mophie" name for its products and launched its first generation "Mophie Juice Pack" integrated portable battery case.  Today, Mophie designs and manufactures a range of cases and accessories for the Apple iPhone, iPod and iPad products.

13.     Plaintiff Huang first met Defendant Julio Loza while Julio Loza was the intellectual property lawyer for Plaintiff Huang's prior employer.  Julio Loza is a registered patent attorney, and represented himself to be a specialist in intellectual property matters.  Defendant L&L publicly touts its attorneys' expertise in intellectual property issues.  Indeed, Defendants' website boasts that "[w]e work closely with our clients to develop strong intellectual property portfolios, protect their ideas, trademarks, and slogans, and provide logical, straightforward solutions for all intellectual property issues."  Defendant L&L's website advertises that Julio Loza "has broad experience in all aspects of patent, trademark, trade secret, and copyright protection and enforcement as well as technology licensing and Internet law."  Defendant L&L's website also boasts that Julio Loza "graduated from Loyola Law School, Los Angeles, where he also served as an adjunct professor of intellectual property law.  He earned his Bachelor and Master Degrees in Electrical Engineering from Harvey Mudd College, and has work experience as a software developer and hardware designer. ...  His technical expertise includes wireless communications, mobile devices, microprocessors, memory devices, software, encryption schemes, and network architectures."

14.     When Plaintiff Huang formed Mophie, he retained Defendant L&L, and specifically Julio Loza, to advise Mophie regarding intellectual property issues, including development of its intellectual property portfolio, protection of its ideas, designs, inventions and trademarks, and to provide advice regarding intellectual property issues.  Defendant Julio Loza was to handle the documentation, registration and protection of Plaintiff Mophie's intellectual property interests.

15.     Thereafter, Defendant Julio Loza introduced his wife and legal partner, Defendant Christina Loza, to Plaintiffs.  Defendants represented Christina Loza to be an intellectual property law specialist, with an emphasis on enforcement and litigation.  Defendant L&L's website touts that Christina Loza "has experience in all areas of intellectual property law including trademarks, patents, copyrights, trade secrets, domain name disputes, internet law, eBay dispute resolution, as well as, IP licensing, counseling, and litigation."  Defendants' website also promotes the fact that Christina Loza is a member of the American Intellectual Property Law Association."  It was Plaintiffs' understanding based upon representations made by L&L that Defendant Christina Loza would handle enforcement and litigation issues for Mophie.

16.     Defendants also undertook representation of Plaintiff Huang's interests in connection with Plaintiff Mophie's intellectual property portfolio.  Mr. Huang sought advice from Defendants regarding his individual rights and interests in Mophie's intellectual property portfolio.  Defendants consulted with Mr. Huang personally and provided advice to Mr. Huang regarding his individual rights and interests.  Thereby an attorney-client relationship was created between Mr. Huang and Defendants.

17.     Defendants failed to provide either Mophie or Mr. Huang with written retainers or fee agreements in connection with their representation of Plaintiffs in violation of California Business and Professions Code Section 6148.  Defendants also failed to advise either Mophie or Mr. Huang of potential conflicts between the

1   interests of the company Mophie and the interests of Mr. Huang, as an individual and

2   CEO of the company, and instead proceeded with representation of both Plaintiffs

3   without obtaining waivers of such conflicts in violation of Rule 3-310(B) of the

4   California Rules of Professional Conduct.

5   **DEFENDANTS' BOTCHED ATTEMPTS TO ENFORCE PLAINTIFFS'**

6   **PATENTS**

7        18.    Defendants' website boasts: "Our clients rely on Loza & Loza to make

8   sure that their competition is not infringing on their intellectual property rights.  Loza

9   & Loza frequently counsels our clients in various trademark, patent, copyright, and

10   domain name disputes (cybersquatting and typosquatting), for both plaintiffs and

11   defendants.  Loza & Loza attempts to identify and resolve potential infringement

12   early so that both parties are in a position to successfully negotiate a licensing

13   agreement.  However, we are prepared to fully enforce and litigate our client's

14   intellectual property rights."

15        19.    Plaintiff Mophie retained Defendants to identify and resolve potential

16   infringement of its intellectual property rights, and relied upon Defendants to provide

17   strategic advice and legal services regarding potential infringements.

18        20.    Beginning in Spring 2010, Plaintiff Mophie identified several of its

19   competitors' products that potentially infringed upon its patents (and patent

20   applications), and brought them to the attention of Defendants.  Plaintiffs relied upon

21   Defendants to develop a strategy for addressing these potentially infringing products

22   that would protect Mophie's intellectual property interests, while not exposing it to

23   unnecessary litigation or expense.  Plaintiffs emphasized to Defendants that they

24   sought to be conservative and cautious in asserting allegations of infringement in

25   order to avoid excessively aggressive responses.

26        21.    Defendant Christina Loza advised Plaintiffs that Mophie should issue

27   notice or demand letters to the companies which were marketing the allegedly

28   infringing products, for the purpose of non-judicial resolution.  Without adequately

1   counseling Plaintiffs on the ramifications of such letters, Defendant L&L prepared

2   and delivered patently aggressive "cease and desist" letters that threatened that

3   Defendants would "proceed to file suit and immediately seek a Temporary

4   Restraining Order, Preliminary Injunction, monetary damages, and recovery of our

5   attorneys' fees and costs." Under clear and prevailing case law available at the time

6   the "cease and desist" letters were written, such aggressive language provides legal

7   basis for the filing of declaratory judgment actions by the letters' recipients.

8   Defendant L&L did not tell Plaintiff Huang or Mophie that such "cease and desist"

9   letters would or could trigger declaratory judgment actions by the letters' recipients.

10  No drafts of the "cease and desist" letters were provided to Plaintiff Huang or to

11  Mophie prior to their delivery. In providing advice to Plaintiffs, Defendants failed to

12  use such skill, diligence and prudence as members of the legal profession commonly

13  possess and exercise. Specifically, Christina Loza failed to research, or failed to

14  comprehend, recent dispositive case law holding that "cease and desist" letters

15  threatening to bring legal action comprise a "real and justiciable controversy",

16  providing the basis for a declaratory judgment action, and failed to draft the "cease

17  and desist" letters to avoid triggering declaratory judgment actions.

18       22.    Plaintiffs had specifically instructed Defendants that they wanted to

19  avoid litigation and wanted to take conservative steps in enforcing Mophie's

20  intellectual property rights. Prior to sending the aggressive and threatening "cease

21  and desist" letters, Defendant Christina Loza failed adequately to advise Plaintiffs

22  that there was a likelihood that the recipients of the letters would file declaratory

23  judgment actions. Further, Christina Loza misrepresented to Plaintiffs that the

24  language of the letters to competitors would not result in any challenges to the

25  validity of Plaintiffs' patents. Defendants knew or should have known that the overly

26  aggressive language of the letters increased the likelihood of Plaintiffs being sued in

27  declaratory judgment actions, and should have informed Plaintiffs of that risk.

28

1    Defendants' conduct fell below the standard of care of attorneys practicing in the

2    field.

3         23.    Defendants also proceeded with enforcement efforts based solely upon

4    certain Design Patents (discussed in further detail below), rather than waiting for the

5    issuance of the utility patents whose applications remained pending.  As discussed

6    below, Defendants had failed to explain to Plaintiffs the nature of the design patent

7    protection and that such patents do not provide protection to functional elements of

8    Mophie's products.  In connection with the "cease and desist" letters, Defendants also

9    neglected to explain to Plaintiffs that, by attempting to enforce the Design Patents,

10   they would expose themselves to legal challenges to the validity of the Design

11   Patents themselves.

12        24.    In yet another error, Defendants' "cease and desist" letters mistakenly

13   attributed ownership of the Design Patents to Plaintiff Mophie, when in fact

14   Defendants had applied for the patents, and the patents had issued, in the name of Mr.

15   Huang.  Thus, the "cease and desist" letters' assertions that the patents were owned

16   by Mophie were demonstrably false and misleading.

17        25.    Defendant C. Loza sent the following "cease and desist" letters on behalf

18   of Plaintiff Mophie:

19             a.    5/6/2010 to Ilene Berman/Airport Wireless re "Power Packs"

20   iPhone battery packs;

21             b.    6/3/2010 to Joseph Carrillo and Sumeet Gupta/Phonesuit re "Mili"

22   and "Mili Pro" iPhone battery packs;

23             c.    6/8/2010 to Sashi Reddy/Case-Mate Georgia, LLC re "Fuel Lite"

24   iPhone battery packs; and

25             d.    6/16/2010 to Ed Kang, Hali-Power Inc. re "Mili" iPhone battery

26   packs.  Copies of these "Cease and Desist" Letters are attached hereto as Exhibit A.

27        26.    Each of the "cease and desist" letters erroneously identified Plaintiff

28   Mophie as the owner of the patents allegedly infringed, claimed that the competitive

1    product infringed on the Design Patents, and threatened immediate legal action

2    against the recipients.

3         27.    As a direct result of Defendants' improper and negligent "cease and

4    desist" letters, Mophie was sued by two of its competitors seeking declaratory

5    judgments of non-infringement and invalidity of the Design Patents.

6         28.    The first case, Case-Ari, LLC d/b/a Case-Mate v. Mophie, Inc., 1:10-cv-

7    1874-CAP (the "Case-Mate Action"), was filed in the United States District Court

8    "U.S.D.C.") for the Northern District of Georgia, Atlanta Division on June 17, 2010.

9    Defendants and Plaintiffs were served with the complaint in the Case-Mate Action

10   immediately thereafter.

11        29.    After the Case-Mate Action was filed, Defendants advised Plaintiffs that

12   Christina Loza was inexperienced in actual litigation, but nevertheless assured

13   Plaintiffs that she had the expertise to handle the defense of the lawsuit.  Thereafter,

14   Defendant Christina Loza advised Plaintiffs to file a "placeholder" lawsuit in the

15   local United States District Court.  Defendant Christina Loza told Plaintiffs that this

16   action would enable Plaintiffs to force any litigations filed elsewhere to be transferred

17   to the California venue, and would give  Plaintiffs a strategic advantage in any future

18   litigations.  It was at this time that Defendants first disclosed that the Design Patents

19   had been issued in Plaintiff Huang's name and that Plaintiff Huang would need to be

20   a party to any enforcement actions.  On June 24, 2010, Defendants filed a complaint

21   styled "Daniel Huang v. GC Technology, LLC d/b/a Phonesuit, Hali-Power Inc. and

22   Case-Ari, LLC d/b/a Case-Mate, 2:10-cv-04705-CAS-VBK in the U.S.D.C. for the

23   Central District of California (the "Huang Action").  Prior to its dismissal, Plaintiffs

24   incurred substantial legal fees in connection with this action, in an amount not less

25   than $50,000.  But for Defendants' negligent representation of Plaintiffs in sending

26   "cease and desist" letters which Defendants knew or should have known would result

27   in declaratory judgment actions, Plaintiffs would not have suffered the financial

28   losses and loss of reputation in the market relating to this lawsuit.

30.   On June 30, 2010, Mophie's competitor, Hali-Power, Inc., filed a lawsuit styled Hali-Power, Inc. v. Mophie, Inc., 1:10-cv-00773-GLS-RFT, in the U.S.D.C. for the Northern District of New York, Albany Division, and thereafter served the complaint on Plaintiff Mophie and Defendants.  As with the Case-Mate Action, the Hali-Power Action also cited the aggressive "cease and desist" letters as precipitating the lawsuit.  In addition, however, the complaint in the Hali-Power Action also pointed to the complaint in the Huang Action as providing further evidence of a "real and justiciable controversy" between the parties.

31.   Each of the complaints in the Case-Mate Action and the Hali-Power Action sought declaratory judgment of non-infringement and declaratory judgment of invalidity of the Design Patents.  The complaints each asserted that the Design Patents were invalid based upon extensive lists of prior art in registered patents and design patents.

32.   Plaintiff Mophie sought to negotiate settlement of the Hali-Power Action, and was forced to expend significant financial resources in pursuit of this negotiated resolution.  Prior to its settlement, Plaintiff Mophie incurred more than $100,000 in legal fees and costs associated with the Hali-Power Action, and significant loss of reputation in the market.

33.   Case-Mate, on the other hand, actively prosecuted its claims, including alleging that Plaintiffs Mophie and Mr. Huang engaged in fraud and patent abuse as a result of the confusion over the name in which the patents were issued.   Prior to its settlement, Plaintiffs incurred no less than $65,000 in legal fees and costs defending this action.

34.   Defendants' ill-fated attempt to enforce the caused Plaintiffs to be sued in two actions in foreign jurisdictions which threatened to invalidate the Design Patents and expose Plaintiffs to potential liability for fraud, abuse of patent claims, and  caused Plaintiff Huang to become personally involved in a third lawsuit in California federal court.  The legal expenses incurred by Plaintiffs in connection with

1  these three unnecessary and avoidable lawsuits caused solely by Defendants' legal

2  malpractice exceeded $215,000.

3  **DEFENDANTS IMPROPERLY MISPREPRESENTED FACT THAT THEY**

4  **SOUGHT PATENTS IN MR. HUANG'S NAME RATHER THAN IN THE**

5  **NAME OF MOPHIE**

6        35.    Defendant L&L's website asserts: "Loza & Loza assists clients in

7  creatively finding the ideal way to protect their inventions and enforce their rights.

8  We focus on our clients' business plan in order to see how the client's patentable

9  technology fits into the big picture.  This helps us to create a strategy for a strong

10  portfolio that is attractive to investors and licensees."

11        36.    Another of the intellectual property issues that Mophie retained

12  Defendants to handle was the procurement of patents for its inventions and designs.

13  Specifically, Plaintiff Mophie sought the highest value protection available for its

14  signature products, battery packs, holsters, and processing and interface platforms for

15  use with mobile devices, i.e., the products marketed as the "Mophie Juice Packs".

16  Plaintiffs relied upon Defendants to advise them in creating a strategy for a strong

17  intellectual property portfolio, including obtaining the most appropriate and effective

18  patents.

19        37.    Defendants advised Plaintiffs to seek both utility and design patents for

20  the battery pack inventions, and filed the following applications for patents related to

21  the "Mophie Juice Pack" products:

22            a.    1/8/2008 Provisional Utility Patent Application:  61/021/897 for

23  Battery Pack and Holster for Mobile Devices (the "'897 Patent Application");

24            b.    1/21/2009 Utility Patent Application:  12/357/262 for Battery

25  Pack, Holster, and Extendible Processing and Interface Platform for Mobile Devices

26  (superseding prior '897 Patent application) (the "'262 Patent Application");

27            c.    3/30/2009 Design Patent Application:  D616360 for Contoured

28  Battery Pack (the "'360 Design Patent"); and

d.      3/30/2009 Design Patent Application:  D616361 for Contoured Battery Pack (the "'361 Design Patent").

38.      Without adequately counseling Plaintiffs, Defendants filed applications for each of these patents in the name of Plaintiff Huang as sole inventor and sole owner, rather than in the name of the company, Plaintiff Mophie.  Defendant Julio Loza, however, had been well aware that Mophie wanted all of its intellectual property issued directly in its name.

39.      Defendants did not advise Plaintiffs of the various legal issues involved in determining the proper party for ownership of the patented inventions or the potential risks to the company or to Plaintiff Huang from seeking patents for the products in Mr. Huang's individual capacity, including but not limited to the threat of litigation against and liability of Mr. Huang in his personal capacity, potential tax issues and potential "alter ego" allegations in connection with corporate litigations and liabilities, which Defendants knew or should have known.  Nor did Defendants inform Plaintiffs of the potential conflict of interests between Mr. Huang and Mophie with respect to this issue, which included the potentially adverse financial interests of the two parties over ownership of these highly valuable intellectual property assets, i.e., the patents.

40.      On May 25, 2010, the '360 and '361 Design Patents issued in the name of Mr. Huang.

41.      At the very least, the applications for the patents in the name of Mr. Huang should have been accompanied by a written transfer of the patent rights to Plaintiff Mophie.  Defendants did not advise Plaintiffs of the need for a written transfer of the patents from Mr. Huang to Mophie, and did not prepare or file such a document on Plaintiffs' behalf.  Defendants had a duty to Plaintiff Mophie to ensure that the patents were transferred to Mophie in a timely manner.  Defendants had a duty to take action in the interest of Plaintiff Mophie, including advising Mr. Huang of the company's interests and/or informing other officers of Mophie of the need to

1     transfer the patents. Defendants failed to take any such action, and failed to prepare

2     written transfer agreements for the patents applied for in Plaintiff Huang's name.

3           42.     Defendants' above-described conduct fell far below the standard of care

4     in the preparation of the patent applications, including: failing to research and

5     understand the law relating to employer ownership of employee inventions; failing to

6     advise Plaintiffs regarding the patent applications being filed solely in the name of

7     Mr. Huang; and failing to advise Plaintiff Mophie (if necessary, through someone

8     other than Mr. Huang) of the need to transfer the patents to Plaintiff Mophie; and

9     failing to prepare written transfer agreements for the patents applied for in Plaintiff

10     Huang's name to be transferred to the company, Plaintiff Mophie.

11           43.     As discussed above, Defendants then improperly issued aggressive and

12     threatening "cease and desist" letters to Mophie's competitors alleging infringement

13     of the Design Patents, without fully advising Plaintiffs of the ramifications of this

14     course of action, without properly analyzing whether the allegedly infringing

15     products did, in fact, infringe upon the Design Patents, and misrepresenting to

16     Mophie's competitors that the Design Patents had been issued in the name of Mophie,

17     when in fact, they had been sought by Defendants in the name of Plaintiff Huang.

18           44.     When Plaintiffs learned that patents had been sought, and some had been

19     issued, in Mr. Huang's name rather than the company name, Defendants Christina

20     Loza and Julio Loza, intentionally or recklessly, misrepresented to Plaintiffs that the

21     patents had been transferred from Mr. Huang to Plaintiff Mophie. Contrary to this

22     representation, however, Defendants had never prepared written transfer agreements

23     between the Plaintiffs.

24           45.     The standard of care for attorneys required Defendants to candidly

25     advise Plaintiffs that they had applied for the patents for the wrong party in the first

26     place, and then that they had failed to prepare written transfers of the patents

27     improperly registered to Mr. Huang over to Mophie. Defendants failed to exercise a

28     professional standard of care by: failing to advise Plaintiffs regarding the appropriate

1   party for the patent applications; by applying for patents in Mr. Huang's name rather

2   than in Mophie's name; by failing to prepare and file written transfer documents for

3   the patent issued in Plaintiff Huang's name; by misrepresenting that the patents had

4   been transferred from Plaintiff Huang to Plaintiff Mophie when in fact they had not

5   been transferred.

6          46.    As a result of Defendants' wrongful conduct, Plaintiffs have incurred

7   attorneys' fees associated with preparing written documents transferring the patents to

8   Plaintiff Mophie.  In addition, as discussed in further detail below, Plaintiffs have

9   incurred legal fees in connection with lawsuits precipitated, in part, by Defendants'

10  failure to apply for the patents in the name of, or thereafter to transfer them to,

11  Plaintiff Mophie.

12                **DEFENDANTS MISHANDLED PLAINTIFFS' DESIGN PATENT**

13                                    **APPLICATIONS**

14         47.    In addition to failing to effectuate transfers of the patents and patent

15  applications to Mophie, Defendants also failed to consult with Plaintiffs prior to filing

16  the patent applications with the Patent and Trademark Office ("PTO") regarding the

17  legal issues of inventorship and ownership of patents, and the adverse consequences

18  of failing to disclose all inventors' names to the PTO.  Defendants did not seek or

19  obtain from Plaintiffs the information necessary to correctly determine the legally

20  appropriate name of all inventors under which the patent applications should have

21  been filed, and omitted the name of a co-inventor on two of the patent applications.

22  Had Defendants undertaken professionally standard efforts to investigate the facts

23  and advise their clients regarding the issues presented by the patent applications, they

24  would have learned that Plaintiff Daniel Huang was not the sole inventor of products

25  covered by the '360 Design Patent and the '262 Utility Patent application.  Rather,

26  Defendants prepared the patent applications without even raising the question of

27  inventorship or informing Plaintiffs that they would identify Daniel Huang as the sole

28  inventor and owner of the patents, much less explaining to Plaintiffs the issues and

1   seeking the information necessary to determine the proper inventors to identify in the
2   applications.  As a direct result of Defendants' misconduct in failing to identify the
3   co-inventor in the application, both the '360 Design Patent and the '262 Utility Patent
4   application have been rendered vulnerable to challenge to their patentability.
5   Defendants' misconduct has resulted in myriad other adverse consequences for
6   Plaintiffs including but not limited to confusion in the market, the necessity of
7   expending additional legal fees to correct the mistakes on the
8   issued patents and/or pending patent applications, and the appearance of impropriety
9   before the PTO.
10          48.    Furthermore, Defendants deficiently prepared the Design Patent
11   applications and misrepresented to Plaintiffs the nature of the patent protection which
12   could, under law, be afforded to Plaintiffs' inventions by the Design Patents.
13   Defendants sought and obtained two Design Patents relating to the "Mophie Juice
14   Pack" products, the '360 Design Patent and the '361 Design Patent.  In proceeding
15   with the applications for the Design Patents, Defendants breached their duties to
16   Plaintiffs by failing fully to advise Plaintiffs of the nature of the protection available
17   under a design patent limited to aesthetic features, rather than to functionality, which
18   Defendants knew or should have known would provide limited protection to
19   Mophie's products due to the primarily functional nature of the products.
20          49.    Instead, Defendants misrepresented to Plaintiffs that they had succeeded
21   in obtaining patents that would adequately protect Mophie's intellectual property
22   interests in the "Mophie Juice Pack" products and, as described above, advised
23   Plaintiffs to undertake aggressive enforcement actions based upon the design patents,
24   which Defendants knew or should have known would result in harm to Plaintiffs.
25          50.    Additionally, although Plaintiffs had retained Defendants to advise them
26   regarding a strategy for protecting their intellectual property portfolio, Defendants
27   failed to advise Plaintiffs of the one-year period in which a party may apply for patent
28   protection after the first sale of an invention, known as the 'On-Sale Bar'.  In

1  preparing the '360 Design Patent application, Defendants failed to properly research

2  the facts supporting the Design Patent applications, or to advise Plaintiffs to provide

3  such facts, that would determine the 'on-sale date' of the invention presented in the

4  '360 Design Patent.  Defendants' failure to advise Plaintiffs of the "On-Sale" statutory

5  bar, failure to properly consult with Plaintiffs regarding the "On-Sale" statutory bar in

6  connection with the '360 Design Patent application, and failure to provide accurate

7  information in the '360 Design Patent Application has jeopardized the patent

8  protection afforded by the '360 Patent.

9      51.    Defendants' conduct in this regard fell below the standards for a

10  reasonable patent attorney practicing in the area, and caused Plaintiffs harm by

11  placing the '360 Design Patent and the '262 Patent Application at risk of legal

12  challenges to patentability thereby robbing Plaintiffs of the full value of their property

13  rights under the law, in addition to incurring on-going fees for additional legal

14  services related to defending Plaintiffs' intellectual property rights which were

15  jeopardized by Defendants' malfeasance, including but not limited to having to seek

16  permission from the PTO to amend the '262 Patent Application to identify the co-

17  inventor.

18  **LOZA & LOZA INCOMPETENTLY REPRESENTED MOPHIE IN ITS**

19  **TRADEMARK APPLICATIONS**

20      52.    Defendants' website acknowledges: "A strong IP portfolio has immense

21  value to an individual or company.  Accordingly, obtaining and maintaining IP is and

22  should be an essential, "top-priority" business practice.  For example, if a patent or

23  trademark is weak or acquired in an improper way, it can certainly affect eventual

24  licensing of the IP, the value of the IP, the sale of the company, and may affect the

25  validity of the IP when it is under dispute or being litigated."  The website further

26  promises that: "Loza & Loza excels at being in touch with our clients' objectives,

27  procuring high quality, valuable IP, and maintaining that IP so that it remains strong,

28  valuable, and valid."

53.     Among other things, Plaintiff Mophie retained Defendants, and relied upon them, to "obtain and maintain" its intellectual property portfolio, including specifically applying for registration of Plaintiff Mophie's patents, trademarks and copyrights.  Plaintiff Mophie relied upon Defendants to procure the "high quality, valuable IP" they promised.

54.     Among the intellectual property issues that Mophie retained Defendants to handle was the procurement of appropriate trademarks for the business and its products.  Specifically, Plaintiff Mophie sought the highest value protection available for its signature product line, the "Mophie Juice Pack."

55.     In November 2007, Defendants undertook to file a trademark application for the name of this product, and recommended that trademark registration be sought solely for the words "Juice Pack", not the full name "Mophie Juice Pack."  On or about November 11, 2007, Christina Loza filed the application on behalf of Plaintiff Mophie to register the trademark "Juice Pack" for use in connection with, among other things, batteries and battery packs.

56.     In preparing the application, Defendants failed to use such skill, prudence and diligence as members of the legal profession commonly possess and exercise in preparing trademark applications, including by: failing to competently research the types of names that reasonably could be expected to be given trademark status for battery-related products; failing to competently analyze the likelihood that the "Juice Pack" name would be registered by the U.S. PTO; and failing to research and assess previously registered names similar to "Juice Pack" that could prevent the PTO from registering the mark.

57.     Defendants also failed to advise Mophie of the risks to its intellectual property rights if the application was rejected.  Defendants also failed to inform Plaintiffs that altering the application to the full term "Mophie Juice Pack" would significantly reduce the risk of rejection by the PTO, and that this was a more reasonable, safer alternative course of action.  Because Defendants did not fully

1   advise Mophie of the issues and risks associated with the "Juice Pack" application or

2   the merits of an alternative "Mophie Juice Pack" application, Mophie was not

3   provided the opportunity to and did not provide its full and informed consent for

4   Defendants to proceed with the application for the mark "Juice Pack".

5       58.   Through a PTO Office Action dated March 31, 2008, the PTO refused

6   registration of the "Juice Pack" term.  According to the PTO, the "Juice Pack"

7   application was rejected because of a likelihood of confusion with previously

8   registered trademarks and design marks which contained the term "Juice" in

9   connection with battery products.  Had Defendants used such skill, prudence and

10  diligences as members of the legal profession commonly exercise in preparing

11  trademark applications, Defendants would have discovered the prior-registered marks

12  utilizing the word "Juice" in connection with battery products.  Defendants should

13  have known and advised Plaintiffs that the PTO would reject the application for the

14  phrase "Juice Pack" and should have recommended the application be sought for the

15  full name of the product, the "Mophie Juice Pack."  On information and belief, had

16  the application been filed for "Mophie Juice Pack", it would have registered by the

17  PTO, and a reasonable attorney practicing in the field of intellectual property would

18  have done so.

19      59.   In June 2008, Defendants filed a response to the PTO Office Action,

20  arguing that the "Juice Pack" mark did not create a likelihood of confusion with the

21  previously registered "Juice" marks.  Upon information and belief, Defendants failed

22  to use such skill, prudence and diligence as members of the legal profession

23  commonly possess and exercise in responding to PTO Office Actions by presenting

24  ineffective and unpersuasive arguments to the PTO, which a reasonable attorney

25  practicing in the area would not have done.  By Office Action dated July 2008,

26  Defendants' arguments were rejected and the PTO's refusal of the "Juice Pack"

27  application became "final."

28

60.     On or about February 13, 2009, the trademark application for "Juice Pack" was abandoned for failure to respond to the second PTO Office Action prior to January 1, 2009.  Defendants never informed Mophie that it had the opportunity to respond or appeal the PTO's July 2008 Office Action, which a reasonable attorney practicing in the field would have done.  Nor did Defendants advise Mophie that the trademark application could have been revised to include the full term "Mophie Juice Pack".  Instead, Defendants allowed the time for response to lapse and the application to be deemed "abandoned."

61.     Because Plaintiffs failed to inform Mophie of the PTO's rejection and the subsequent abandonment of the trademark application, Mophie did not attempt to register any other trademark, such as "Mophie Juice Pack", or otherwise protect its intellectual property rights.

62.     On or about October 4, 2010, after terminating Defendants' services and retaining new intellectual property counsel, Mophie filed applications for registration of various trademarks utilizing the phrase "Mophie Juice Pack."  Because the original action was "abandoned," these trademark applications will not swear back to the November 2007 date that Mophie's original trademark application was filed.  As a direct result of Defendants' wrongful conduct, not only has Mophie incurred additional legal fees in connection with the second trademark application, but it has lost three years of priority in its mark, rendering the marks vulnerable to challenges by similar marks registered in the interim period between November 2007 and October 2010.

63.     After terminating Defendants' services, Plaintiffs also learned that several of the trademark applications filed by Defendants on behalf of Mophie had actually been filed under an incorrect corporate name.  Over the course of the representation, Defendants negligently filed some nine trademark applications on behalf of "mStation Audio Inc., a California Corporation."  Yet, no such corporation exists, or has ever existed.  From May 2005, through the date of termination of

Defendants' services, the entity name for Plaintiff Mophie has been "mStation Corporation, a California Corporation."  Yet, Plaintiff filed the following applications for registration of Mophie trademarks in the name of a non-existent company:

       a.     Registration Number 3227723, Trademark Application for "MOPHIE", filed June 8, 2006, Owner "mStation Audio, Inc. Corporation California";

       b.     Registration Number 3227724, Trademark Application for "RELO", filed June 8, 2006, Owner "mStation Audio, Inc. Corporation California";

       c.     Registration Number 3227725, Trademark Application for "M MOPHIE", filed June 8, 2006, Owner "mStation Audio, Inc. Corporation California";

       d.     Registration Number 3400661, Trademark Application for "WRAPTOR", filed December 5, 2006, Owner "mStation Audio, Inc. Corporation California";

       e.     Application Serial Number 77057293, Trademark Application for "MUEVA", filed December 5, 2006, Owner "mStation Audio, Inc. Corporation California";

       f.     Registration Number 3681443, Trademark Application for "M", filed December 10, 2007, Owner "mStation Audio, Inc. Corporation California";

       g.     Registration Number 3681444, Trademark Application for "M", filed December 10, 2007, Owner "mStation Audio, Inc. Corporation California";

       h.     Application Serial Number 77348524, Trademark Application for "M", filed December 10, 2007, Owner "mStation Audio, Inc. Corporation California"; and

       i.     Application Serial Number 77348530, Trademark Application for "M", filed December 10, 2007, Owner "mStation Audio, Inc. Corporation California".

       64.    Defendants had a duty to conduct reasonable investigation to ensure that the information on the Trademark applications it filed on Plaintiff's Mophie's behalf

1  was accurate, and Plaintiff Mophie relied upon Defendants to prepare its Trademark

2  applications accurately.  In filing these Trademark applications in the incorrect name,

3  Defendants not only exhibited gross professional negligence (e.g., they repeatedly got

4  the name of their own client wrong in formal applications to the PTO), they

5  jeopardized Plaintiff Mophie's significant intellectual property rights in these marks.

6  Plaintiff must undergo the expense of having the registrations and applications

7  transferred to the correct name.

8  **LOZA & LOZA'S NEGLIGENCE NECESSITATES AUDIT OF MOPHIE'S**

9  **INTELLECTUAL PROPERTY PORTFOLIO**

10  65.  While representing Plaintiffs, Defendants had a duty to maintain in a

11  professional manner files relating to legal services provided to Plaintiffs.  After

12  Plaintiffs terminated Defendants' representation, Defendants had a duty to deliver to

13  Plaintiffs full and complete copy of the files relating to Defendants' work on

14  Plaintiffs' matters.

15  66.  Upon termination of the representation, Plaintiffs requested that

16  Defendants deliver to them copies of all documents and files maintained by

17  Defendants with respect to Plaintiffs and their legal matters.

18  67.  The files delivered by Defendants to Plaintiffs were disorganized and

19  incomplete, in breach of Defendants' ethical obligations to Plaintiffs.  Indeed, the files

20  were so disorganized and incomplete that Plaintiffs are unable to ascertain the status

21  of Mophie's intellectual property portfolio, including the status of the various

22  trademark, copyright and patent applications and registrations undertaken by

23  Defendants on Plaintiffs' behalves.

24  68.  As a direct and proximate result of Defendants' mismanagement of

25  Mophie's intellectual property portfolio and their failure to maintain files relating

26  thereto in a professional manner, Mophie must now undertake an audit of its

27  intellectual property portfolio, including searching for all copyright, trademark, patent

28  and other intellectual property interest applications and registrations filed by

Defendants on Plaintiffs' behalves to determine the status of each, and whether any need additional filings, extensions, appeals and the like.  This audit is substantially more extensive that would regularly be undertaken by replacement counsel, and is specifically necessitated by the disorganized and incomplete state of the files delivered by Defendants.  Plaintiff Mophie has retained replacement intellectual property counsel for the purpose of performing such an audit.  The estimated cost of the audit is $32,000.

## FIRST CAUSE OF ACTION

(Breach Of Fiduciary Duty)

(By All Plaintiffs Against All Defendants)

69.     Plaintiffs hereby reallege paragraphs 1 through 68 inclusive, which are incorporated by reference as though set forth in full herein.

70.     Defendant L&L was at all relevant times a law firm engaged in the practice of law in the state of California.

71.     Defendant J. Loza is a registered patent attorney, licensed to and practicing law in the State of California, and at all relevant times has been a shareholder and partner in Defendant L&L.

72.     Defendant C. Loza is a registered patent attorney, licensed to and practicing law in the State of California, and at all relevant times has been a shareholder and partner in Defendant L&L.

73.     Plaintiff Mophie employed Defendants to provide legal counsel and services regarding its intellectual property portfolio, and thereby an attorney-client relationship was created between Plaintiff Mophie and Defendants.

74.     Defendants also undertook representation of Plaintiff Huang's interests in connection with Plaintiff Mophie's intellectual property portfolio.  Mr. Huang sought advice from Defendants regarding his individual rights and interests in Mophie's intellectual property portfolio.  Defendants consulted with Mr. Huang personally and provided advice to Mr. Huang regarding his individual rights and

1   interests.  Thereby an attorney-client relationship was created between Mr. Huang

2   and Defendants.

3          75.    By virtue of their confidential attorney-client relationship and

4   Defendants' superior knowledge, it was reasonable for Plaintiffs to repose trust and

5   confidence in Defendants, and each of them, and a fiduciary relationship thereby

6   existed whereby Plaintiffs reasonably relied on the integrity, fidelity and honesty of

7   Defendants.  As such, and by virtue of their status of attorneys to Plaintiffs,

8   Defendants owed fiduciary duties to Plaintiffs to act with the highest degree of

9   loyalty, good faith and care in accordance with the highest of legal ethical standards,

10  and to disclose fully all material facts that could bear upon the subject matter of

11  Plaintiffs' relationship with Defendants and the subject matter of the retention.  In

12  addition, Defendants owed all customary professional and fiduciary duties to

13  Plaintiffs, including a duty of loyalty to Plaintiffs not to act adversely to their

14  interests and to refrain from taking any action or omitting to take any action which is

15  likely to result in loss, injury, damage, harm or detriment to Plaintiffs.

16         76.    By the conduct alleged above, Defendants have breached their fiduciary

17  duties to Plaintiffs, including by:

18                a.     Failing to provide a written retainer and fee agreement;

19                b.     Failing fully and faithfully to advise Plaintiffs of potential

20  conflicts of interests posed by Defendants' representation of both Plaintiff Mophie

21  and Plaintiff Huang;

22                c.     Failing fully and faithfully to advise Plaintiff Mophie regarding

23  the trademark application filed by Defendants on its behalf, which was "abandoned"

24  by Defendants as of February 13, 2009;

25                d.     Failing fully and faithfully to advise Plaintiffs regarding the issues

26  of inventorship and ownership of patents;

27                e.     Failing fully and faithfully to advise Plaintiffs regarding

28  Defendants' filing of patent applications on behalf of Plaintiff Huang;

1      f.      Failing fully and faithfully to advise Plaintiffs regarding

2   Defendants' failure to prepare and file written documentation of transfer of patents

3   from Plaintiff Mophie to Plaintiff Huang;

4      g.      Failing fully and faithfully to advise Plaintiffs regarding the On-

5   Sale statutory bar for patent applications;

6      h.      Failing fully and faithfully to advise Plaintiffs of the risks

7   associated with the aggressive "cease and desist" letters prepared by Defendants,

8   including that they would be likely to precipitate costly declaratory judgment actions

9   against Plaintiffs seeking determinations of non-infringement and invalidity of the

10   asserted patents; and

11      i.      Failing to maintain files relating to legal services provided to

12   Plaintiffs in a professionally organized and complete manner, and failing to deliver to

13   Plaintiffs such files upon termination of the relationship.

14      77.      As a direct and proximate result of such conduct, Plaintiffs have suffered

15   economic damage in an amount yet to be determined, but including but not limited to

16   loss of value of Mophie's intellectual property, attorneys' fees, costs and costs of suit

17   herein.  In addition, Plaintiffs will be required to undertake an audit of their

18   intellectual property portfolio in order to protect their intellectual property rights.

19      78.      The conduct of Defendants, and each of them, as alleged above, was

20   grossly negligent, unconscionable, fraudulent, oppressive, malicious and done

21   intentionally or in conscious disregard of Plaintiffs' rights and Defendants' fiduciary

22   obligations, and in order to protect themselves and further their own interests at

23   Plaintiffs' expenses and to their detriment, so as to justify an award of punitive

24   damages.

25   ///

26   ///

27   ///

28   ///

## SECOND CAUSE OF ACTION

(Legal Malpractice – Trademark and Patent Application Issues)

(By All Plaintiffs Against All Defendants)

79.     Plaintiffs hereby reallege paragraphs 1 through 78 inclusive, which are incorporated by reference as though set forth in full herein.

80.     Defendants, and each of them, hold themselves out as specialists in intellectual property matters, including patent law.

81.     Defendants were, at all times relevant to this complaint, in an attorney-client relationship with Plaintiffs.

82.     In handling Plaintiffs' legal matters, Defendants had a legal duty to exercise that degree of learning, skill, diligence and prudence commonly possessed and exercised by attorneys of ordinary skill practicing under similar circumstances. Moreover, by holding themselves out as "specialists" in intellectual property law, including patent law, Defendants had a duty to apply the learning, skill, diligence and prudence commonly possessed and exercised by intellectual property and patent law specialist attorneys.  In addition, Defendants owed all customary professional and fiduciary duties to Plaintiffs, including a duty of loyalty to Plaintiffs not to act adversely to their interests and to refrain from taking any action or omitting to take any action which is likely to result in loss, injury, damage, harm or detriment to Plaintiffs.

83.     At all times relevant hereto, Defendants failed to use such learning, skill, prudence and diligence as members of the legal profession commonly possess and exercise in provision of legal counsel and services for Plaintiff Mophie, in the manner alleged above.  Such acts of malpractice included:

a.      Incompetently handling Plaintiff Mophie's application for trademark registration including by: seeking registration of only "Juice Pack" instead of the full "Mophie Juice Pack" name; presenting ineffective and unpersuasive arguments in response to the first PTO Office Action non-finally rejecting the

1    application; failing to advise Plaintiff Mophie to revise the application to include the

2    full "Mophie Juice Pack" name; failing to advise Mophie of its legal options after the

3    second PTO Office Action and allowing the application to be deemed "abandoned";

4    and failing to advise Plaintiff Mophie to seek registration of a trademark for "Mophie

5    Juice Pack", instead allowing significant time to elapse which prejudiced Mophie's

6    eventual application for the registration of the trademark.

7            b.      Filing applications for registration of nine of Mophie's trademarks

8    in the name of a non-existent corporate entity;

9            c.      Failing to advise Plaintiffs of the potential conflicts of interest and

10   legal ramifications of Defendants' filing of the '897 and '262 Patent Applications in

11   the name of Plaintiff Huang rather than Plaintiff Mophie.

12           d.      Incompetently handling the '360 and '361 Design Patent issues,

13   including by: failing to fully advise Plaintiffs of the On-Sale statutory bar and failing

14   to properly research the facts underlying the On-Sale statutory bar in the '360 Design

15   Patent application; failing to fully advise Plaintiffs regarding the issues of

16   inventorship of patents and failing to properly research the facts underlying the

17   invention subject of the '360 Design Patent and the '262 Patent Application; failing to

18   identify the co-inventor of the '360 Design Patent and the '262 Patent Application;

19   applying for registration of the '360 and '361 Design Patents in the name of Mr.

20   Huang rather than Mophie without having advised either Plaintiffs of the potential

21   conflicts of interest and the legal ramifications of this decision; failing adequately to

22   advise Plaintiffs of the need to transfer the Design Patents to Mophie and failing to

23   prepare written documentation of such transfers; falsely representing to Plaintiffs that

24   the Design Patents had been transferred to Plaintiffs when in fact they had not been

25   so transferred; and failing fully and faithfully to advise Plaintiffs regarding the

26   limitations of the Design Patents as they applied to the "Mophie Juice Pack" product.

27

28

84.    As a result of the actions, errors and omissions set forth above, Defendants have breached their legal duties to Plaintiffs, have been professionally negligent and have committed professional malpractice.

85.    But for Defendants' professional malpractice, Plaintiff Mophie would have succeeded in obtaining valuable trademark registration for the "Mophie Juice Pack" mark years earlier than the eventual registration; would not need to incur fees in effectuating transfer of nine trademarks and applications from a non-existent company; would have received registration of the '360 and '361 Design Patents in its name or would have had them transferred to itself prior to the issuance of the "cease and desist" letters; would not need to undergo additional fees and costs to prepare documentation transferring those patents to itself; would have an enforceable '360 Design Patent; would not have incurred additional expense in amending the '262 Patent Application to identify a co-inventor; would not need to undertake an audit of its intellectual property portfolio to protect its interests against further harm resulting from Defendants' incompetence and malpractice; and would not have incurred excessive legal fees and costs relating to unnecessary and ineffectual actions undertaken by Defendants and legal fees and costs incurred in connection with correcting mistakes made by Defendants.

86.    But for Defendants' professional malpractice, Plaintiff Huang would not have had the '360 and '361 Design Patents improperly issued in his name alone or would have had such Design Patents transferred to Plaintiff Mophie prior to the issuance of the "cease and desist" letters; would not have been exposed to potential litigation and other risks associated with having patents relating to Mophie's signature product issued to himself personally; and would not have incurred excessive legal fees and costs relating to unnecessary and ineffectual actions undertaken by Defendants and legal fees and costs relating to correcting mistakes made by Defendants.

1    87.    As a direct and proximate result of Defendants' professional malpractice,

2    Plaintiffs have suffered economic damages in an amount yet to be determined,

3    including:  costs and legal fees paid to Defendants in connection with Defendants'

4    improper and incompetent services; and legal fees to replacement counsel to transfer

5    patent applications to Mophie, to file new trademark applications, and to conduct an

6    audit of Mophie's intellectual property portfolio to protect Plaintiffs from further

7    damage resulting from Defendants' negligence and incompetence.  To date, these

8    economic damages exceed $200,000.

9    88.    As a direct and proximate result of Defendants' malpractice, the '360

10   Design Patent is effectively unenforceable, causing economic damage to Plaintiffs in

11   an amount yet to be determined.

12   89.    As a direct and proximate result of Defendants' malpractice, Plaintiff

13   Mophie also suffered damage to its business reputation, and continues to face damage

14   and risk to its intellectual property portfolio, causing economic damage in an amount

15   yet to be determined.

16   90.    The conduct of Defendants, and each of them, as alleged above, was

17   grossly negligent, unconscionable, fraudulent, oppressive, malicious and done

18   intentionally or in conscious disregard of Plaintiffs' rights and Defendants' fiduciary

19   obligations, and in order to protect themselves and further their own interests at

20   Plaintiffs' expenses and to their detriment, so as to justify an award of punitive

21   damages.

22                          **THIRD CAUSE OF ACTION**

23        (Legal Malpractice – "Cease and Desist" Letters and Resulting Litigations)

24                     (By All Plaintiffs Against All Defendants)

25   91.    Plaintiffs hereby reallege paragraphs 1 through 90 inclusive, which are

26   incorporated by reference as though set forth in full herein.

27   92.    Defendants, and each of them, hold themselves out as specialists in

28   intellectual property matters, including litigation of patent issues.

93.    Defendants were, at all times relevant to this complaint, in an attorney-client relationship with Plaintiffs.

94.    In handling Plaintiffs' legal matters, Defendants had a legal duty to exercise that degree of learning, skill, diligence and prudence commonly possessed and exercised by attorneys of ordinary skill practicing under similar circumstances. Moreover, by holding themselves out as "specialists" in intellectual property law, including patent law, Defendants had a duty to apply the learning, skill, diligence and prudence commonly possessed and exercised by intellectual property and patent law specialist attorneys. In addition, Defendants owed all customary professional and fiduciary duties to Plaintiffs, including a duty of loyalty to Plaintiffs not to act adversely to their interests and to refrain from taking any action or omitting to take any action which is likely to result in loss, injury, damage, harm or detriment to Plaintiffs.

95.    At all times relevant hereto, Defendants failed to use such skill, prudence and diligence as members of the legal profession commonly possess and exercise in provision of legal counsel and services for Plaintiff Mophie in connection with the attempted enforcement of the '360 and '361 Design Patents, in the manner alleged above. Such acts of malpractice included:

a.    Incompetently advising Plaintiffs to assert infringement claims based upon the Design Patents instead of waiting for issuance of the '262 Patent;

b.    Incompetently preparing "cease and desist" letters with inappropriately aggressive and threatening language which as drafted would provide bases for declaratory judgment actions against Mophie;

c.    Failing to research and analyze the likelihood that the aggressive and threatening "cease and desist" letters would provoke declaratory judgment actions against Plaintiffs;

d.      Failing to advise Plaintiffs as to the likelihood that the "cease and desist' letters prepared by Defendants would provoke declaratory judgment actions against Plaintiffs;

e.      Issuing "cease and desist" letters that mistakenly identify Mophie as the owner of the '360 and '361 Design Patents; and

f.      Incompetently advising Mr. Huang to have prepared and filed on his behalf an unnecessary patent infringement action against Mophie's competitors based upon the limited Design Patents.

96.     As a result of the actions, errors and omissions set forth above, Defendants have breached their legal duties to Plaintiffs, have been professionally negligent and have committed professional malpractice.

97.     But for Defendants' professional malpractice, Plaintiff Mophie would not have would not have been sued in two separate declaratory judgment actions, Plaintiffs would not have filed the California Lawsuit, and would not have incurred excessive legal fees and costs relating to unnecessary and ineffectual actions undertaken by Defendants or legal fees and costs relating to correcting mistakes made by Defendants.

98.     But for Defendants' professional malpractice, Mr. Huang would not have had the '360 and '361 Design Patents improperly issued in his name, or such would have been transferred to Mophie prior to the issuance of the "cease and desist" letters; would not have been exposed to potential litigation and other risks associated with having patents relating to Mophie's signature product issued to himself personally; and would not have incurred excessive legal fees and costs relating to unnecessary and ineffectual actions undertaken by Defendants or legal fees and costs relating to correcting mistakes made by Defendants.

99.     As a direct and proximate result of Defendants' professional malpractice, Plaintiffs have suffered economic damages in an amount yet to be determined, including:  costs and legal fees paid to Defendants in connection with Defendants'

1  improper and incompetent services; costs and legal fees charged by Defendants in

2  association with correcting Defendants' own mistakes, including filing the California

3  Case; costs and legal fees to replacement counsel to defend against the declaratory

4  judgment actions; costs and legal fees and costs to prosecute the California Action.

5  To date, these economic damages exceed $215,000.

6       100.   As a direct and proximate result of Defendants' malpractice, Mophie also

7  suffered damage to its business reputation, and continues to face damage and risk to

8  its intellectual property portfolio, causing economic damage in an amount yet to be

9  determined.

10       101.   The conduct of Defendants, and each of them, as alleged above, was

11  grossly negligent, unconscionable, fraudulent, oppressive, malicious and done

12  intentionally or in conscious disregard of Plaintiffs' rights and Defendants' fiduciary

13  obligations, and in order to protect themselves and further their own interests at

14  Plaintiffs' expense and to their detriment, so as to justify an award of punitive

15  damages.

16  **PRAYER FOR RELIEF**

17       WHEREFORE Plaintiffs pray for judgment against Defendants as follows:

18       1.  For actual damages as alleged above;

19       2.  For punitive damages;

20       3.  For attorney's fees as allowed by law;

21  ///

22  ///

23  ///

24  ///

25

26

27

28

4.  For costs of suit herein incurred; and

5.  For such other and further relief as the Court may deem proper.

Dated:  April 7, 2011          Respectfully Submitted,

SCHWARZ, RIMBERG, BOYD & RADER, LLP


By: _____
        Kathryn Lee Boyd
        Jeff D. Neiderman

Attorney for Plaintiffs
Mophie, Inc. and Daniel Huang


## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury herein.

Dated:  April 7, 2011          Respectfully Submitted,

SCHWARZ, RIMBERG, BOYD & RADER, LLP


By: _____
        Kathryn Lee Boyd
        Jeff D. Neiderman

Attorney for Plaintiffs
Mophie, Inc. and Daniel Huang

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge David O. Carter and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV11- 539 DOC (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] Western Division<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] Southern Division<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] Eastern Division<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)   NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:
Kathryn Lee Boyd, Esq. (SBN 189496)
Jeff D. Neiderman, Esq. (SBN 203818)
Schwarcz, Rimberg, Boyd & Rader, LLP
6310 San Vicente Boulevard, Suite 360
Los Angeles, California 90048

ORIGINAL

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| Mophie, Inc., formerly known as mStation Corporation, a California Corporation, and Daniel Huang, an individual | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **SACV11-00539 DOC (MLGx)** |
| v. | |
| Loza & Loza, LLP, a California Limited Liability Partnership, Julio Loza, an individual and Christine S. Loza, an individual | **SUMMONS** |
| DEFENDANT(S). | |

TO: DEFENDANT(S): Loza & Loza, LLP, a California Limited Liability Partnership, Julio Loza, an individual and Christine S. Loza, an individual

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Kathryn Lee Boyd, Esq. _____, whose address is 6310 San Vicente Boulevard, Suite 360 Los Angeles, California 90048 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: APR -7 2011

By: ROLLS ROYCE PASCHAL

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                SUMMONS

Name & Address:
Kathryn Lee Boyd, Esq. (SBN 189496)
Jeff D. Neiderman, Esq. (SBN 203818)
Schwarcz, Rimberg, Boyd & Rader, LLP
6310 San Vicente Boulevard, Suite 360
Los Angeles, California 90048

ⒸCOPY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mophie, Inc., formerly known as mStation Corporation, a California Corporation, and Daniel Huang, an individual<br><br>PLAINTIFF(S)<br><br>v.<br><br>Loza & Loza, LLP, a California Limited Liability Partnership, Julio Loza, an individual and Christine S. Loza, an individual<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**SACV11-00539 DOC (MLGx)**<br><br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): <u>Loza & Loza, LLP, a California Limited Liability Partnership,</u>
        <u>Julio Loza, an individual and Christine S. Loza, an individual</u>

      A lawsuit has been filed against you.

      Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, <u>Kathryn Lee Boyd, Esq.</u>_____, whose address is <u>6310 San Vicente Boulevard, Suite 360 Los Angeles, California 90048</u>.   If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.   You also must file your answer or motion with the court.

                                          Clerk, U.S. District Court

Dated: APR ꞊7 2011                        By: ROLLS ROYCE PASCHAL
_____                      _____
                                              Deputy Clerk

                                              *(Seal of the Court)*

                                                                    1144

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Mophie, Inc., formerly known as mStation Corporation, a California Corporation, and Daniel Huang, an individual | Loza & Loza, LLP, a California Limited Liability Partnership, Julio Loza, an individual and Christine S. Loza, an individual |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Schwarcz, Rimberg, Boyd & Rader, LLP<br>6310 San Vicente Boulevard, Suite 360<br>Los Angeles, California 90048 | Kathryn Lee Boyd, Esq. (SBN 189496); Jeff D. Neiderman, Esq. (SBN 203818) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ amt to be determined at trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
(1) Professional Negligence; (2) Breach of Fiduciary Duty; and (3) Negligent Misrepresentation all arising out of 29 U.S.C. 1338

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☒ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco- mmodations | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number:   **SACV11-00539 DOC (MLGx)**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)   CIVIL COVER SHEET   Page 1 of 2